# HARDT *v.* HEIDWEYER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 268. Submitted March 13, 1894. — Decided April 2, 1894.

Whether a debtor in Illinois in failing circumstances has or has not the right by transfers of property to prefer certain creditors in the disposition of his assets, it is clear that he has not the right to transfer to such creditors property largely in excess of their claims to the injury of other general creditors.

A bill in that State by other creditors of the debtor filed several years after

such transfers were made, which attacks them and prays to have them decreed to be invalid and to have the assigned property distributed *pro rata* among the general creditors, and which alleges that the plaintiffs were ignorant of the matters complained of, but now have knowledge acquired within a month prior to the filing of the bill, but which does not show how knowledge of the wrongs complained of was obtained, nor why they had not had earlier the same means of ascertaining the facts, may be dismissed, on demurrer, for laches on the part of the complainants.

ON April 23, 1889, the appellants as plaintiffs, citizens of the State of New York, filed their bill in the Circuit Court of the United States for the Northern District of Illinois, making as defendants the following persons, citizens of the State of Illinois: Sigismund Heidweyer, Norbert Stieglitz, the National Bank of Illinois, Siegmund Florsheim, Philip Florsheim, and Simon Florsheim. On January 15, 1890, they filed an amendment to their bill. To the bill, with its amendment, the defendants demurred on the several grounds of a want of equity in the bill, the laches of plaintiffs, a lack of jurisdiction, and a defect of parties. On May 5, 1890, this demurrer was sustained, and the bill dismissed. From the decree of dismissal the plaintiffs appealed to this court.

The facts as stated in this bill and its amendment are as follows: The plaintiffs were judgment creditors of the defendants Heidweyer & Stieglitz, a firm doing business in Chicago from July, 1875, to October 15, 1884. As early as January 1, 1884, the latter were hopelessly insolvent, their liabilities exceeding even their nominal assets, as they well knew. By the assistance of friends, however, they were enabled to keep up the appearance of doing business until October. Early in September they ascertained and determined definitely that they must fail, make a general disposition of their property among their creditors, and go out of business. At that time their indebtedness amounted to about $240,000, their assets to about $150,000, of which $125,000 was the value of their merchandise, and $25,000 that of their bills receivable and open accounts. Among other creditors were the following parties to whom Heidweyer & Stieglitz claimed was due at the time the sums set opposite to their names:

| | |
|---|---|
| " National Bank of Illinois............ | $12,000 00 |
| Siegmund Florsheim................ | 2,628 00 |
| Julius Heimann................... | 5,000 00 |
| Julius Heimann, administrator....... | 5,000 00 |
| Florsheim Brothers................ | 5,000 00 |
| Philip Florsheim .................. | 9,000 00 |
| Simon Florsheim.....:............ | 5,000 00 |
| Herman Hahlo..................... | 2,500 00 |
| .Hahlo, Stieglitz & Co.............. | 2,086 56 " |

In fact, the true amount due to such parties was much less than the sums so named. In addition to this, the defendant Siegmund Florsheim was liable, as they pretended, as endorser on their commercial paper for the sum of $22,925.

It was their duty — so the bill avers — in view of their financial condition, under the policy of the assignment law of Illinois, to make in due form a general assignment to some person of all their property for the benefit of their creditors, and without any preferences; but instead of doing this they consulted with counsel as to the best means to prefer the creditors above named. On September 16, by the advice of such counsel, they executed certain judgment notes, payable on demand to the parties, and for amounts as follows:

| | |
|---|---|
| " National Bank of Illinois........... | $12,000 00 |
| Siegmund Florsheim................ | 41,553 50 |
| Florsheim Brothers................ | 5,000 00 |
| Philip Florsheim.................. | 9,000 00 " |

On the note in favor of Siegmund Florsheim, $16,000 was subsequently credited as paid. On October 13 they executed further judgment notes, payable on demand, as follows:

| | |
|---|---|
| " Julius Heimann, two notes, each...., | $5,000 00 |
| Simon Florsheim .................. | 5,000 00 |
| H. Hahlo & Co. ................... | 2,500 00 |
| Hahlo, Stieglitz & Co.............. | 2,086 56 " |

On October 15 the counsel above referred to, acting for both

the creditors and the debtors, caused judgments to be entered upon said notes in the Superior Court of Cook County, Illinois, in favor of the creditors for the amounts of principal and interest and attorneys' fees, the attorneys' fees amounting in all the cases to the sum of $3564.04. Immediately after the entry of such judgments executions were issued thereon to the sheriff of Cook County, who levied upon the stock of merchandise of said firm of Heidweyer & Stieglitz, being all the tangible property of which they were possessed, and of the value of $125,000. Of this merchandise about $8500 was replevied from the sheriff before the sale, and the remainder sold at great sacrifice, producing only $65,537.38, which sum was applied upon the executions, leaving a small balance due upon most of them. The only property of value which the said Heidweyer & Stieglitz, on October 15, possessed other than the stock of merchandise, were certain bills receivable, of the value of about $18,000, and certain accounts receivable, of the value of about $6000. It is charged "that as a part of the same scheme of preference said Heidweyer & Stieglitz assigned and delivered said bills and accounts receivable to the defendant Simon Florsheim in trust to collect the same for the benefit of said judgment creditors as to the amounts remaining unpaid on their aforesaid judgments, and for the benefit of himself as to a claim of thirteen hundred dollars due to him by said Norbert Stieglitz individually, the surplus, if any, to be returned to said Heidweyer & Stieglitz; so that, out of said accounts and bills receivable so assigned and out of said replevied goods subsequently surrendered or paid for, said defendant's judgment creditors as aforesaid have received the amounts of their judgments and interest and said attorneys' fees in full. Said defendant, Simon Florsheim, has received payment in full of his claim against the defendant Norbert Stieglitz, as aforesaid, and the entire scheme originally devised by and between said Heidweyer & Stieglitz and said judgment creditors has been successfully accomplished, and all the property of said defendants, Heidweyer & Stieglitz, has been appropriated to prefer said creditors to the exclusion of all others." And that all these "judgment notes,

judgments entered thereon, executions issued, levies and sales thereunder, transfers, assignments, and other dispositions of all their property, . . . are in effect but one instrument and one transaction, and, taken together, constitute a general assignment for the benefit of creditors," and " were all entered into and consummated in pursuance of a conspiracy between the parties thereto to defraud the other creditors of said Heidweyer & Stieglitz."

It is further charged " that while it is true that all the transactions aforesaid constitute an assignment for the benefit of creditors, yet said assignment is fraudulent and void as to creditors, in this, that said judgment notes were purposely given for sums greater than was due the payees thereof respectively at the time they were so given; that the sum provided in said judgment notes for attorneys' fees, being thirty-five hundred and sixty-four $\frac{4}{100}$ dollars, and which was included in said judgments confessed and thereafter collected thereon, was so inserted in said instruments with actual intent to hinder, delay, and defraud the creditors of said Heidweyer & Stieglitz, and actually has defrauded them, whereby said notes, judgments, and everything that was done under them became wholly fraudulent and void as to the creditors of said Heidweyer & Stieglitz, and in that all of said transactions constituting such assignment were conceived and executed from beginning to end with the sole and only purpose of defrauding the law and defrauding all the creditors not intended to be protected thereby, including your orators."

The amendment was intended to cover the objection of laches, and its allegations in respect thereto are as follows :

" And your orators further represent that at the time of the several transactions hereinbefore mentioned they were and ever since have been residents of the city of New York, and that the judgment creditors aforesaid, who were defendants to this bill, were and now are residents of the city of Chicago ; that immediately after the entry of the judgments aforesaid, your orators caused an investigation to be made as to the genuineness of the indebtedness represented by said judgments and the good faith of the judgment creditors in having them

entered and enforced in the manner set forth herein; that it was upon such investigation given out, represented, and stated to your orators by each of said judgment creditors, defendants herein, that their said judgments were for full value and were entered aggressively by them for the sole purpose of realizing the moneys due them respectively, and that they did so without the knowledge, privity, or procurement of the debtors themselves, and said debtors then stated that they had still a large amount of property remaining in their hands in the form of book accounts and bills receivable, applicable to the payment of their other debts, and that they proposed to convert the same and apply the proceeds thereof to such payment as soon as possible.

"Relying upon which statements and believing the same to be true, your orators refrained for a considerable time to take legal measures to collect the large indebtedness due them in the belief also that the transactions as to said judgments were *bona fide* and having no knowledge or information of any fact tending to show that they constituted, constructively, an assignment for the equal benefit of all creditors.

"A long time afterwards and within, to wit, less than one month from the time of bringing this suit, your orators for the first time learned not only that said judgments covered and took all the tangible property of said Heidweyer & Stieglitz, but that the entry thereof was procured by them for the express purpose of preferring said judgment creditors, and that at the same time they transferred all their remaining property to a trustee for the benefit of creditors, as heretofore in this bill alleged, thereby creating an assignment, as herein alleged."

The relief sought for was as follows: "That the several judgment notes, judgments confessed theron, executions, levies, and sales thereunder, transfer of bills and accounts receivable, and all other transactions had and done by and between said Heidweyer & Stieglitz and said preferred creditors and hereinbefore referred to be adjudged to constitute a voluntary assignment for the benefit of the creditors of said Heidweyer & Stieglitz with preferences; that the preferences be declared void; that said preferred creditors be held chargeable and be

charged and decreed to account jointly and severally as assignees and trustees for all the property which has come to their hands or possession or to the hands or possession of any of them by virtue of any of the transactions related herein; that said assignees and trustee be removed and a receiver appointed, to whom they shall be decreed to account for the same at its true market value and not for the amount they may have realized out of it; that the fund so to be realized, if it shall appear to the court that said assignment is not altogether void, shall be distributed ratably among your orators and all the creditors of said debtors under the direction of the court, excluding from the distribution, however, and postponing the creditors guilty of the frauds aforesaid until all others are fully paid; but if it shall appear to the court, by reason of the frauds alleged, that said assignment is altogether fraudulent and void as to creditors, then that said fund be paid in satisfaction of the judgment or your orators and of all other creditors who may be entitled, and that the complainants may have such other and further relief as may be just."

*Mr. Daniel K. Tenney, Mr. Edward O. Brown,* and *Mr. Charles E. Pope* for appellants. *Mr. Sydney Richmond Taber* for Schnabel Brothers, appellants.

I. None of the objections raised by the special demurrers warranted the dismissal of the bill.

*a.* Appellants were not guilty of laches. *Kilbourn* v. *Sunderland,* 130 U. S. 505; *Meader* v. *Norton,* 11 Wall. 442; *Michoud* v. *Girod,* 4 How. 503; *Sheldon* v. *Keokuk Packet Co.,* 8 Fed. Rep. 769; *Le Gendre* v. *Byrnes,* 44 N. J. Eq. 372; *Radcliff* v. *Rowley,* 2 Barb. Ch. 23; *Waterman* v. *Sprague Mfg. Co.,* 55 Connecticut, 554.

*b.* The Circuit Court had jurisdiction. *Gorrell* v. *Dickson,* 26 Fed. Rep. 454; *Putnam* v. *New Albany,* 4 Bissell, 365; *Ogilvie* v. *Knox Insurance Co.,* 22 How. 380; 2 Black, 539; *Buck* v. *Colbath,* 3 Wall. 334; *Shields* v. *Thomas,* 18 How. 253; *Barber* v. *Barber,* 21 How. 582.

*c.* There was no defect of parties. *Ogilvie* v. *Knox Ins. Co.,*

22 How. 380; *Horn* v. *Lockhart*, 17 Wall. 570; *Hotel Co.* v. *Wade*, 97 U. S. 13.

II. The bill was improperly dismissed under the general clause of the demurrer.

*a.* The bill shows fraud sufficient to invoke and compel equitable relief. *Pickett* v. *Pipkin*, 64 Alabama, 520; *Thomas* v. *Beck*, 39 Connecticut, 241; *Preston* v. *Spaulding*, 120 Illinois, 208; *Farwell* v. *Nilsson*, 133 Illinois, 45; *Hulse* v. *Mershon*, 125 Illinois, 52.

*b.* The several instruments and transactions described in the bill constitute in effect a general assignment with preferences, which is consequently void, as being in contravention of the Illinois statute relating to voluntary assignments. *White* v. *Cotzhausen*, 129 U. S. 329, 337, 338, 341, 342.

III. The construction of that statute by the Supreme Court of Illinois, in *Farwell* v. *Nilsson*, *supra*, is not conclusive, because that case is distinguishable from the suit at bar. *Farwell* v. *Cohen*, 138 Illinois, 216; *Weber* v. *Mick*, 131 Illinois, 520; *Hanchett* v. *Waterbury*, 115 Illinois, 220; *Preston* v. *Spaulding*, 120 Illinois, 208; *Home Natl. Bank* v. *Sanchez*, 131 Illinois, 330; *Hanford Oil Co.* v. *First Natl. Bank*, 126 Illinois, 584; *Hide and Leather Natl. Bank* v. *Rehm*, 126 Illinois, 461; *Hanford* v. *Prouty*, 133 Illinois, 339.

IV. The construction now placed upon that statute by the Supreme Court of Illinois is not the established law of that State. *Farwell* v. *Nilsson*, 133 Illinois, 45; *Bucher* v. *Cheshire Railroad*, 125 U. S. 555; *Scipio* v. *Wright*, 101 U. S. 665; *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244; *Preston* v. *Spaulding*, 120 Illinois, 208; *Hide and Leather National Bank* v. *Rehm*, 126 Illinois, 461; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; *Pease* v. *Peck*, 18 How. 595; *Farwell* v. *Cohen*, 138 Illinois, 216.

Even if this court feel bound to adopt the general construction by the Illinois Supreme Court of the Illinois statute applied to instruments of assignment, they are under no obligation to accept the inference that the Illinois court draws as to whether the particular instruments before this court are or are not such "instruments of assignment." *Schroeder* v. *Walsh*,

120 Illinois, 403 ; *Farwell* v. *Nilsson*, 133 Illinois, 45 ; *Pana* v. *Bowler*, 107 U. S. 529 ; *Swift* v. *Tyson*, 16 Pet. 1 ; *Myrick* v. *Michigan Central Railroad*, 107 U. S. 102.

V. If there may be an obligation on the part of this court to follow the construction by a state court of a statute of that State in an action at law, there is no such obligation in a suit in equity. *Bucher* v. *Cheshire Railroad*, 125 U. S. 555 ; *Leffingwell* v. *Warren*, 2 Black, 599 ; *Luther* v. *Borden*, 7 How. 1 ; *Johnston* v. *Western Union Telegraph Co.*, 33 Fed. Rep. 362 ; *United States* v. *Reid*, 12 How. 361 ; *Neves* v. *Scott*, 13 How. 268.

VI. Construction of state statutes by state courts may not be invoked in the United States courts to determine rights that have arisen before the state court's decision. *East Alabama Railway* v. *Doe*, 114 U. S. 340 ; *Farwell* v. *Cohen*, 138 Illinois, 216 ; *Buncome County Commissioners* v. *Tommey*, 115 U. S. 122 ; *Rollins* v. *Lake County*, 34 Fed. Rep. 845 ; *Anderson* v. *Santa Anna*, 116 U. S. 356 ; *Bolles* v. *Brimfield*, 120 U. S. 759 ; *Barnum* v. *Okolana*, 148 U. S. 393 ; *Knox County* v. *Ninth National Bank*, 147 U. S. 91 ; *Clark* v. *Bever*, 139 U. S. 96 ; *Union Trust Company* v. *Trumbull*, 137 Illinois, 146.

VII. Weight of authority, as well as principle, is in favor of this court's adopting its own construction of a state statute, notwithstanding a contrary construction by the highest court of that State. This the court has done:

(*a*) Where there has been no decision by a Federal court before that of the state court; *Butz* v. *Muscatine*, 8 Wall. 575 ; *Pine Grove* v. *Talcott*, 19 Wall. 666 ; *Pana* v. *Bowler*, 107 U. S. 529 ; *Lane* v. *Vick*, 3 How. 464. (*b*) Where there has been a decision by one of the United States Circuit Courts before that by the state court. *Burgess* v. *Seligman*, 107 U. S. 20, 33. (*c*) Where there has been a decision by this court before that of the state court. *Rowan* v. *Runnels*, 5 How. 134 ; *Pease* v. *Peck*, 18 How. 595 ; *Carroll County* v. *Smith*, 111 U. S. 556.

As citizens of foreign States appellants are entitled to the independent judgment of the United States Supreme Court.

*Watson* v. *Tarpley*, 18 How. 517; *Burgess* v. *Seligman*, 107 U. S. 20; *Pease* v. *Peck*, 18 How. 595; *New Orleans Water Works Co.* v. *Southern Brewing Co.*, 36 Fed. Rep. 833; *Carroll County* v. *Smith*, 111 U. S. 556.

*Mr. Curtis H. Remy* for appellees.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

It will be perceived that nowhere in the bill is it alleged that the failing debtors Heidweyer & Stieglitz ever executed any formal written assignment for the benefit of creditors. It is charged that they gave to certain creditors judgment notes, and assigned and delivered their bills and accounts to one of the creditors in trust; that these judgment notes, with the proceedings had thereon, and the assignments of bills receivable and accounts, were in effect but one instrument and one transaction, and constituted a general assignment for the benefit of creditors; and this, as plaintiffs insist, brought the case within the ruling in *White* v. *Cotzhausen*, 129 U. S. 329, 342, in which this court, by Mr. Justice Harlan, said, "that when an insolvent debtor recognizes the fact that he can no longer go on in business, and determines to yield the dominion of his entire estate, and in execution of that purpose, or with an intent to evade the statute, transfers all, or substantially all, his property to a part of his creditors, in order to provide for them in preference to other creditors, the instrument or instruments by which such transfers are made and that result is reached, whatever their form, will be held to operate as an assignment, the benefits of which may be claimed by any creditor not so preferred, who will take appropriate steps in a court of equity to enforce the equality contemplated by the statute. Such, we think, is the necessary result of the decisions in the highest court of the State."

On the other hand, it is contended that the Supreme Court of the State has since that decision reached a different conclusion, and in support thereof reference is made to the opinion in *Young* v. *Clapp*, 147 Illinois, 176, 184, where this language

is found : " The thirteenth ·section of the assignment act does
not prohibit preferences generally, but only preferences which
are contained in written deeds of assignment voluntarily exe-
cuted for the benefit of creditors.   The language of the sec-
tion is, that ' every provision in any assignment hereafter made
in this State for the payment of one debt or liability in prefer-
ence to another shall be void.'   A preference, given by a
debtor after he has made up .his mind. to execute a general
assignment for the benefit of his creditors, has been held to
be void upon the theory that such a· preference must be
regarded as a part of the assignment.   There is no such thing
as a constructive assignment contemplated by the assignment
act.   That act does not take away the common law right of
a debtor to prefer one or more of his creditors.   A prefer-
ence may be given by the execution of a judgment note result-
ing in the entry thereon of a judgment."   See also *Schroeder*
v. *Walsh*, 120 Illinois, 403, 412°; *Weber* v. *Mick*, 131 Illinois,
520, 533 ; *National Bank* v. *North Wisconsin Lumber Co.*, 41
Illinois App. 383 ; and *American Cutlery Co.* v. *Joseph*, 44
Illinois App. 194 ; *Ross* v. *Walker*, decided November 27,
1893, by the Appellate Court of Illinois, and reported in 26
Chicago Legal News, 133.

It is insisted that this construction of the statute should be
accepted by this court as controlling, and the case of *Union
Bank of Chicago* v. *Kansas City Bank*, 136 U. S. 223, 235, is
cited, in which this court said :

" The question of the construction and effect of a statute of
a State, regulating assignments for the benefit of creditors,
is a question upon which the decisions of the highest court of
the State, establishing a rule of property, are of controlling
authority in the courts of the United States."

But we deem it unnecessary to enter into any consideration
of this question, or to determine whether there is any substan-
tial difference between the views of the Supreme Court of
Illinois and those of this court, or whether in case such differ-
ence be found to exist it becomes the duty of this court to
defer to the opinions expressed by that, for there are questions
nearer to the surface and controlling.   Even if it be conceded

that there is not disclosed by this bill that which is equivalent
to a voluntary assignment within the scope of the statute, and
that in the absence of restrictive statutes a failing debtor has
the right to prefer certain creditors, even to the entire exclu-
sion of others, — *Jewell* v. *Knight*, 123 U. S. 426, 434, and
cases cited ; *Smith* v. *Craft*, 123 U. S. 436, — yet such debtor
cannot, under pretence of preferring certain creditors, pay to
them sums largely in excess of their demands, and thus prevent
his other creditors from receiving any payment.  Here the
charge distinctly is, that while Heidweyer & Stieglitz claimed
to owe the preferred creditors certain sums for which they gave
judgment notes, and which judgment notes were afterwards
satisfied in full, yet the amounts in fact due to such creditors
were much less than those so named and paid ; and that is a
wrong of which the creditors who receive no payment can
justly complain.  It is unnecessary, therefore, to inquire
whether the transaction between Heidweyer & Stieglitz and
these creditors was within the inhibition of the statute or not.

While this is so, we are constrained to hold that the plain-
tiffs have not shown due promptness in asserting their rights.
It is said by counsel for defendants that it was the decision in
*White* v. *Cotzhausen* which enabled the plaintiffs' to perceive
that they had been defrauded, and our attention is called to
the fact that the opinion in that case was announced January
28, 1889, and this suit was commenced April 23, 1889.  *Post
hoc, propter hoc*, is not, however, sufficient, and the rule of
causation implies some other sequence than that of time.
Nevertheless, the plaintiffs waited nearly five years before
commencing any proceedings to charge the preferred creditors,
and no satisfactory excuse for the delay is shown.  It is
well settled that a party who seeks to avoid the consequences
of an apparently unreasonable delay in the assertion of his
rights on the ground of ignorance must allege and prove,
not merely the fact of ignorance, but also when and how
knowledge was obtained, in order that the court may deter-
mine whether reasonable effort was made by him to ascertain
the facts.  Thus, in *Stearns* v. *Page*, 1 Story, 204, 215, 217,
Mr. Justice Story observed :

" General allegations, that there has been fraud, or mistake, or concealment, or misrepresentations, are too loose for purposes of this sort. The charges must be reasonable, definite, and certain as to time, and occasion, and subject-matter. And especially must there be distinct averments of the time when the fraud, mistake, concealment, or misrepresentation was discovered, and how discovered, and what the discovery is; so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made. For, if by such diligence the discovery might have been before made, the bill has no foundation on which it can stand in equity, on account of the laches. . . . But thé bill does not state what particular discoveries have been obtained, or when they were obtained, or by what inquiries, or in what manner, or at what time."

On appeal this decision was affirmed, *Stearns* v. *Page*, 7 How. 819, 829, and in delivering the opinion of this court Mr. Justice Grier laid down the rule in this language: " And especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been before made."

Similar declarations may be found in several subsequent cases; *Badger* v. *Badger*, 2 Wall. 87, 95, in which is found this quotation :

" The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill."

*Godden* v. *Kimmell*, 99 U. S. 201, 211; *Wood* v. *Carpenter*, 101 U. S. 135, 140, in which this court said: '

" A general allegation of ignorance at one time and of knowledge at another is of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not

made sooner." See also *Lansdale* v. *Smith*, 106 U. S. 391, 394; *Hammond* v. *Hopkins*, 143 U. S. 224, 251; *Felix* v. *Patrick*, 145 U. S. 317, 332; *Foster* v. *Mansfield, Coldwater &c. Railroad*, 146 U. S. 88; *Fisher* v. *Boody*, 1 Curtis, 206; *Carr* v. *Hilton*, 1 Curtis, 390; *Moore* v. *Greene*, 2 Curtis, 202.

Tested by this rule, it is apparent that this bill must be held deficient in not showing how knowledge of the wrongs complained of was obtained by the plaintiffs. It is alleged that they were ignorant, and now have knowledge; and that they acquired such knowledge within a month prior to bringing the suit; but how they acquired it, and why they did not have the same means of ascertaining the facts before, is not disclosed.

What were the wrongs complained of? So far as the mere preference is concerned, that was obvious. If the attorneys' fees were improper, *Young* v. *Clapp, ubi supra; Hulse* v. *Mershon*, 125 Illinois, 52, the fact that such attorneys' fees were specified in the notes and included in the judgments was a matter of record. That the stock of goods sold at sheriff's sale for less than its value does not, of itself, show wrong on the part of the parties thereto, plaintiffs or defendants. No act is shown tending to prevent a fair sale, and the result, that of realizing less than the value, is a common experience of such sales, and of itself proves nothing amiss. If these plaintiffs failed to attend such sales, they cannot complain of the result; and if they did attend, they should have seen to it that the property brought its value. At any rate, there is no pretence of a want of knowledge on the part of these plaintiffs. There remain, therefore, as the concealed wrongs, only these matters: First, that the judgment notes were in excess of the real demands; second, that Heidweyer & Stieglitz transferred their bills and accounts receivable in trust to Florsheim, and that that trust included an individual debt of one of the partners. That the plaintiffs knew of the existence of these bills and accounts is shown, and their alleged ignorance is only of the fact of their transfer in trust.

Now, it is a matter of common experience that when there

is so pronounced a failure on the part of a firm carrying such a large stock, there is made by the creditors a thorough examination of the situation. That such an examination, if made, would disclose any substantial difference between the true indebtedness to these preferred creditors and the amount of the notes given to them seems reasonably certain, and if no such examination was made, it indicated indifference on the part of the other creditors. If the plaintiffs relied on the mere statements of these defendants, why did they cease to rely upon such statements, and how did they become advised of their untruth? So, with reference to the bills and accounts receivable; knowing what they were, they could easily have ascertained whether they were collected, and if so, by whom. If collected by other than their debtors, that fact certainly should have provoked inquiry. If collected by the debtors, why were the moneys received not appropriated in payment of other than the preferred claims?

These are matters in respect to which the bill fails to enlighten us. Indeed, so far as disclosed, it would seem that when the debtors failing, and failing for so large a sum, appropriated all their tangible property to the payment of a few of their creditors, the others, including these plaintiffs, accepted the situation, and made no inquiry or challenge of the integrity of the transaction for nearly five years. Such indifference and inattention must be adjudged laches. Upon this ground alone, and without reference to any other questions discussed by counsel in the briefs, the decree of the Circuit Court is

*Affirmed.*