[No. 14685. *En Banc.* January 6, 1919.]

F. G. NOYES, *as Receiver of the Washington-Alaska Bank, Appellant,* v. W. H. PARSONS *et al., Respondents.*[1]

LIMITATION OF ACTIONS (56-58)—DISCOVERY OF FRAUD—OPPORTUNITY FOR DISCOVERY. An action by a receiver, suing on behalf of creditors to set aside as fraudulent a consolidation or transfer of all the assets of one bank to another, is barred by the statute of limitations, Rem. Code, § 159, subd. 4, limiting actions for relief upon the ground of fraud to three years after discovery of the fraud, where the transfer was void as violative of the common law and of the law of the state wherein the grantee bank was incorporated, and such fact was or should have been known to the creditors and to the receiver upon his appointment upon acquiring knowledge of the consolidation, which was more than three years prior to the commencement of the action; since he and the creditors were thereupon immediately charged with notice of the illegality as a fact incapable of concealment, or discoverable with ordinary diligence.

SAME (83) — PLEADING — MATTERS AVOIDING BAR — DISCOVERY OF FRAUD. In an action for relief upon the ground of fraud, in pleading want of knowledge and excusatory facts for delay in bringing the action, a general allegation of ignorance at one time and knowledge at another is not sufficient, but the pleader must set forth the facts constituting impediment to an earlier prosecution of the claim.

[1]Reported in 177 Pac. 651.

Appeal from a judgment of the superior court for King county, Mitchell, J., entered July 23, 1917, upon sustaining a demurrer to the complaint, dismissing an action for equitable relief, tried to the court. Affirmed.

*Hughes, McMicken, Ramsey & Rupp, De Journal & De Journal,* and *Roy V. Nye,* for appellant.

*Clise & Poe* and *Peters & Powell,* for respondents.

Holcomb, J.—This is an action of equitable nature, by the receiver of an insolvent domestic corporation against its trustees and officers, with whom the other stockholders are joined as defendants because of their participation in the wrongs charged, to recover for the amounts taken from the corporation's assets by another corporation in whose possession and control it is alleged the defendants, in violation of their duties as trustees and officers, merged their own corporation. The facts stated in the complaint may be summarized as follows:

In the year 1908, there were engaged in the banking business at Fairbanks, Alaska, a Washington corporation, called the Washington-Alaska Bank, and a Nevada corporation, called the Fairbanks Banking Company. On September 16, 1909, the Washington company sold its business to the Nevada company, at the same time transferring all its shares of stock to the purchaser. The purchase price was $250,000, covering par value of the stock and a bonus of $100,-000. At the time of the sale, the deposits of the Washington company amounted to $1,848,027.72. The amalgamated banks were for more than one year operated by the purchaser ostensibly as two institutions, but on October 8, 1910, the Fairbanks Banking Company amended its articles of incorporation in Ne-

vada, changing its name to the Washington-Alaska Bank, the same name as that of the Washington corporation, and took into its exclusive possession all the assets, fixtures, and personal property in Alaska of the two concerns. In January, 1911, the consolidated bank closed its doors and a receiver therefor was appointed by the Alaska court. At that time the Nevada company had on hand $525,828.05, representing moneys due the depositors and creditors of the original Washington company, of which sum such creditors had been paid by the receiver dividends aggregating fifty per cent of their claims. In 1915, the receiver learned for the first time that, under the statutes in Nevada, it was unlawful for the Nevada corporation to invest its funds in the stock of another bank. This knowledge having been imparted to a creditor of the original Washington company, the creditor instituted a suit in the superior court of King county, Washington, to obtain a receiver for the Washington company, which was successful, and the appellant herein, who was acting as receiver for the Nevada company, was appointed receiver for the Washington company. The receiver thereafter instituted the present action against all the trustees, officers and stockholders of the Washington company, alleging fraud on their part in transferring their stock and the assets of the Washington company to the Nevada company, and praying for a personal judgment against the respondents in the sum of $409,764.36, with interest from January 4, 1911. The respondents demurred to the complaint upon the grounds, (1) that the plaintiff has no legal capacity to sue; (2) that there is a defect of parties plaintiff; (3) that several causes of action have been improperly united; (4) insufficiency of facts to state a cause of action, and

(5) that the action has not been commenced within the time limited by law. The trial court sustained the demurrer upon the last ground.

Disregarding all questions as to the sufficiency of the complaint, except that it contains on its face facts germane to the question of when the alleged fraud was discovered, or should have been discovered, by appellant, we pass at once to a consideration of the question of whether the action is barred by the statute of limitations.

It appears on the face of the complaint that the alleged fraudulent acts of the respondents occurred on September 16, 1909; that the receiver for the insolvent Nevada company was appointed in January, 1911, at which time he took charge of the books and assets of the company, including the books and accounts of the Washington company. It is alleged, however, as an excusatory fact, that the receiver did not discover the fraudulent character of the transaction between the two banks until May, 1915, when he learned for the first time that the Nevada company was without power under its domiciliary laws to acquire the stock of another banking institution.

The statute governing such cases, Rem. Code, § 159, subd. 4, provides a three-year limitation upon "an action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." The present action was begun September, 1915, about seven years after the consummation of the alleged fraud. The fact which appellant contends it did not discover until May, 1915, and by lack of knowledge of which it is excused from bringing an action upon the grounds of fraud alleged sooner than that date, is that there is a Nevada statute prohibiting the purchase by Nevada banking

companies of the stock and assets of other banking companies, and that, perforce, the sale by the Washington company and the purchase by the Nevada company was *ultra vires* the charter powers of the Nevada company, and consequently illegal and void. It is urged that the companies dealt with one another with knowledge of such illegality, but were silent as to the existence of the Nevada statute, to the creditors and to the receiver of the Nevada company and of the Washington company, and hence concealed the fact of the Nevada statute, or that the Nevada statute, being a foreign law, concealed itself.

As we view the complaint, however, the substantive fraud alleged is not the *ultra vires* act of the Nevada company, but the conduct on the part of the stockholders of the Washington company in disposing of its entire assets in such a way as to inflict injury upon its creditors and depositors by means of a transaction impairing the resources upon which the creditors and depositors of the Washington company had a right to rely. The existence or non-existence of the Nevada statute, therefore, and whether it had any extraterritorial force or not—which is a question open to some debate—and knowledge or ignorance of that statute on the part of either the creditors or the receiver, was, it seems, wholly immaterial. Whatever fraud and injury there were, were then fully accomplished. The gist of the action would have been the same if the Nevada statute had never been enacted. The injury inflicted would have been the same with or without that statute. The fraud, if any, was consummated in Alaska, and would have been equally remedied under the common law of that jurisdiction without reference to a foreign statute governing or limiting the charter powers of the foreign corporation.

The complaint alleges that the stockholders of a solvent Washington corporation transferred its stock and assets to an insolvent Nevada company in carrying out a conspiracy to deplete the assets of the Nevada company in the sum of $250,000, for the benefit of the selling stockholders and with the object of enabling the Nevada company to withdraw $200,000 from the assets of the Washington company, alleged to have been a fictitious deposit on the part of one Barnette to apply in liquidation of his fictitious deposit and credited to him as a stockholder of the Nevada company on the books of that company. Receiver Noyes was the representative of the so-called Washington company creditors, and since they were in reality likewise creditors of the Nevada company, which they continued to patronize as the successor of the Washington company, he was their representative, and they, as creditors, must be deemed charged with whatever knowledge the receiver derived or had an opportunity to learn from his inspection of the books and accounts of the Nevada company in January, 1911. He is chargeable with knowledge of the fraud from that date, and the creditors must be held to have had constructive knowledge thereof. In this action he is suing on behalf of the creditors, not on behalf of any stockholders. In fact, he is seeking to hold responsible and liable the stockholders of the corporation. Nor is this a suit on behalf of the state to set aside an unlawful consolidation of two corporations. Conceding that matter of foreign law is matter of fact, as contended by appellant, in construing this section of the statute of limitations, we have many times held that whatever is notice enough to excite attention and put a party upon his guard or call for an inquiry, is notice of everything to which such inquiry might have led. The

presumption is that, if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.

"A party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clue to the fact, which, if followed up diligently would lead to a discovery, is in law equivalent to discovery—equivalent to knowledge." *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561.

See, also, *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360; *McDonald v. McDougall,* 86 Wash. 339, 150 Pac. 625; *Hoy v. Burk,* 92 Wash. 536, 159 Pac. 701.

Appellant here inconsistently urges that the transaction complained of is violative of not only the Nevada statute, but also of the common law; that is, of public policy. We are, ourselves, of the opinion that it was violative of public policy, and therefore of the common law, and must assume the common law to be the same in Alaska as in this jurisdiction. The transaction thus falls within the scope and spirit of many state and Federal decisions cited and quoted by appellant. If that be true, then the receiver or the creditors, upon knowledge of the admitted or pretended consolidation of the Washington and Nevada corporations, were immediately charged with knowledge of the violation of public policy and of the common law of Alaska, and it was immaterial in that case whether the act was violative of the statutory powers of the Nevada corporation. Ignorance of the law was not excusable, although ignorance of a fact often is.

Appellant also adopts a somewhat inconsistent theory that the law of the place of domicile of the corporation follows the corporation and governs its every act wherever performed, and that the general laws of

the place of domicile of a corporation, regulating the powers and duties of corporations, govern its charter powers as well as the act authorizing the charter powers itself, and go with the corporation wherever it goes. We will not enter into a discussion of this question of the extraterritorial effect of such statutes, for, if that be true, we consider it incumbent upon persons dealing with such corporations to at some time ascertain, or fail at their peril, the law of the place of domicile of a corporation with which they deal, and its charter and general powers. The law of Nevada, considered as a fact in a foreign jurisdiction, is not such a fact as could be concealed by any person interested, such as ordinary occurrences between individuals, and when a receiver took charge of the business and assets of a defunct corporation with the duty resting upon him to wind up its affairs, there certainly was some duty resting upon him to acquire knowledge of the exact powers and limitations of the corporation.

The broad assertion that the statute does not run until the fraud is discovered is not tenable. The statute begins to run when the fraud should have been discovered, and a clue to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to discovery. *Deering v. Holcomb, supra.* A general allegation of ignorance at one time and knowledge at another is of no effect. *Hardt v. Heidweyer,* 152 U. S. 547. In order to excuse a want of knowledge of the fraud, a pleading must set forth what were the impediments to an earlier prosecution of the claim, how the pleader came to be so long ignorant of his rights, the means, if any, used by the opposing party fraudulently to keep him in ignorance, or how and when he first obtained knowledge of the matter al-

leged in the pleading. *Pearsall v. Smith,* 149 U. S. 231.

The allegations contained in the complaint negative any excusable want of knowledge of any of the facts necessary to avoid the bar of the statute of limitations on the ground of fraud, and, on the other hand, demonstrate that all the substantive grounds of fraud were known at once, and any other fact necessary to have been known was not actively concealed, was not of a nature to conceal itself, and could have been known by the parties in interest by using ordinary diligence. This is sufficient to start the statute in question running, and justified the sustaining of the demurrer herein.

This being determinative of the matter, other questions presented by the briefs need not be considered. Judgment affirmed.

MAIN, C. J., MOUNT, PARKER, and TOLMAN, JJ., concur.

MACKINTOSH and MITCHELL, JJ., being disqualified, took no part.