**BAKER et al. v. SPOKANE SAV. BANK et al.**
**No. 4433.**

District Court, E. D. Washington, N. D.
Oct. 9, 1933.

Gray & McNaughton, of Cœur d'Alene, Idaho, and Nuzum & Nuzum, of Spokane, Wash., for plaintiffs.

Robert P. Oldham and Hart Snyder, both of Seattle, Wash., and Robertson & Smith and Dillard & Powell, all of Spokane, Wash., for Howard H. Hansen and George H. Jackson.

Fred B. Morrill, Edmond J. Farley and B. A. Farley, all of Spokane, Wash., for interveners.

PRAY, District Judge.

The purpose of this suit is to declare the proceedings for the dissolution of the Spokane Savings & Loan Society illegal and void, and to restore to the society as now constituted the property conveyed by it to the Spokane Savings Bank in 1929. The question before the court at this time is on the motion to dismiss the amended bill of complaint which was argued by counsel for the respective parties in the above-entitled court at Spokane, June 16, 1933. Subsequently briefs were submitted. From a perusal of the amended bill in this case, it seems to the court that unexcused laches is apparent on its face; there is not to be found therein any showing of diligence to discover the illegal and fraudulent acts alleged. To quote from counsel's brief: "By their own allegations the facts are that the name of the building was changed, their pass books were taken up, their corporation was dissolved, and yet, they never investigated."

In order to render the bill impervious to attack by motion to dismiss, it must meet the requirements set forth in the authorities hereinafter cited. This action was commenced about three years after the alleged conversion and three and one-half months after the bank in question was taken in charge by the supervisor for liquidation. In Hays v. Port of Seattle, 251 U. S. 233, 40 S. Ct. 125, 127, 64 L. Ed. 243, the court said: "It rests upon the long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays the assertion of his claim for an unreasonable length of time, especially where the delay has led to a change of conditions that would render it unjust to disturb them at his instance. It is for the complainant in his bill to excuse the delay in seeking equitable relief, where there has been such; and if it be not excused his laches may be taken advantage of either by demurrer or upon final hearing." And again in our own circuit it was held in Bower v. Stein (C. C. A.) 177 F. 673, 678:

"Where the bill distinctly and without the aid of inference discloses laches, and no valid excuse for delay is pleaded, a demurrer will be sustained on that ground." A more comprehensive statement of the showing required is found in Hardt v. Heidweyer, 152 U. S. 547, 558, 559, 14 S. Ct. 671, 673, 38 L. Ed. 548, as follows: "Nevertheless, the plaintiffs waited nearly five years before commencing any proceedings to charge the preferred creditors, and no satisfactory excuse for the delay is shown. It is well settled that a party who seeks to avoid the consequences of an apparently unreasonable delay in the assertion of his rights on the ground of ignorance must allege and prove, not merely the fact of ignorance, but also when and how knowledge was obtained, in order that the court may determine whether reasonable effort was made by him to ascertain the facts. Thus, in Stearns v. Page, Fed. Cas. No. 13,339, 1 Story, 204, 215, 217, Mr. Justice Story observed: 'General allegations that there has been fraud or mistake or concealment or misrepresentations are too loose for purposes of this sort. The charges must be reasonable, definite, and certain as to time and occasion and subject-matter. And especially must there be distinct averments of the time when the fraud, mistake, concealment, or misrepresentation was discovered, and how discovered, and what the discovery is; so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been before made; for if, by such diligence, the discovery might have been before made, the bill has no foundation on which it can stand in equity on account of the laches. * * * But the bill does not state what particular discoveries have been obtained, or when they were obtained, or by what inquiries, or in what manner, or at what time.'"

The foregoing observation by Mr. Justice Story seems to apply with special emphasis to the bill in this case. Here the plaintiffs allege concealment and misrepresentations without a sufficient showing of diligence to excuse the delay.

■■ They allege that they knew nothing about the misrepresentations and fraud committed, and had no means of knowing, until the bank was declared insolvent and the state officials took charge, although in the Beutelspacher suit in the state superior court an effort was made to set aside the dissolution of the society and declare it null and void; this plaintiff and other shareholders acted on behalf of themselves and all other shareholders; there was presented the issue as to whether said society had been dissolved, and on July 1, 1930, the court entered its judgment declaring that the society had been legally dissolved. On appeal the Supreme Court of Washington affirmed this decision. Beutelspacher v. Spokane Sav. Bank, 164 Wash. 227, 2 P.(2d) 729. It seems improbable that a case of such general interest, affecting 52,000 depositors, should have failed to receive great publicity and to have escaped the notice of the plaintiffs herein. The passbooks of the society were taken up as presented and the passbooks of the bank substituted therefor; they were notified by the president of the society and of the bank of the change; was any effort made to examine the books of the society, or of the savings bank, to ascertain what was being done and whether legally done? Ostensibly these proceedings were conducted under and by virtue of a public statute, were entered in the books of both corporations, showing a deed of conveyance, executed and recorded in the proper counties, filed in a state public office, authorized by state officials. In view of the information shown to have been possessed by plaintiffs by the terms of the bill, were they not charged with notice of the change and required to proceed within a reasonable time to set aside the transactions they here claim were illegal and void and a fraud upon the stockholders?

From the bill, briefs, and oral arguments of counsel, the court is warranted in assuming that large sums of money were deposited and invested in the savings bank by innocent persons, relying upon the legality of the conversion of the society into a savings bank. Does it appear what advantage would now be gained by any one if the liquidation were annulled and the assets turned back to the society as now constituted after a lapse of over three and one-half years since the savings bank was organized? Would it be fair to the new depositors and investors to make this change on the general assertion in the bill that the liquidation of the society, if that became necessary, could be carried on at less expense to the stockholders? Does any charge appear to the effect that the present state officers conducting the liquidation of the savings bank are not proceeding honestly, efficiently, and economically in the discharge of their duties? What assurance has the court that the defendants appearing by answer on the part of the society, and asking that the valuable assets be turned over to them, could do any better, or as well? There seems to be no reason why the court should

be influenced by considerations of this nature on the bare assertion in the bill that the assets of the defunct concern would be the better conserved by the one than the other. In determining whether laches exists, present conditions must be considered. It was held in Moore v. Ensley, 112 Ala. 228, 20 So. 744, 749, cited by plaintiffs, that: "The principle that where a party prima facie chargeable with lapse of time, as laches, relies upon ignorance of facts to repel laches, he must clearly allege and explain his ignorance of the facts, and how and when he learned them, cannot apply when the charge is ratification of an unauthorized act by acquiescence." This is the part of the case quoted which has special application here; there is no claim of ratification of an unauthorized act. Plaintiffs rely upon ignorance of the facts while, at the same time, they show by the allegations of their bill that whatever ignorance they might claim existed was mainly due to lack of diligence in acting upon the information they possessed by making further inquiry and then pursuing their remedy. Plaintiffs close their brief by saying that they "did not have full knowledge or really any substantial knowledge of the material facts and of their rights." The bill shows they had abundant knowledge of the changes that had taken place, but what was entirely lacking on their part was even a casual inquiry as to details, easily obtainable.

In Southern Pacific Company v. Bogert et al., 250 U. S. 483, on page 488, 39 S. Ct. 533, 536, 63 L. Ed. 1099, relied upon by plaintiffs, the court held: "The Southern Pacific contends that plaintiffs are barred by laches. The reorganization agreement is dated December 20, 1887; the decree of foreclosure and sale was entered May 4, 1888; the sale was held September 8, 1888; and the stock in the new company was delivered to the Southern Pacific on February 10, 1891. This suit was not begun until July 26, 1913; and not until that time was there a proper attempt to assert the specific equity here enforced, namely, that the Southern Pacific received the stock in the New Houston Company as trustee for the stockholders of the old. More than 22 years had thus elapsed since the wrong complained of was committed. But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the alleged wrong or lack of diligence in seeking a remedy. Here plaintiffs, or others representing them, protested as soon as the terms of the reorganization agreements were announced; and ever since they have with rare pertinacity and undaunted by failure persisted in the diligent pursuit of a remedy as the schedule of the earlier litigation referred to in the margin demonstrates. Where the cause of action is of such a nature that a suit to enforce it would be brought on behalf, not only of the plaintiff, but of all persons similarly situated, it is not essential that each such person should intervene in the suit brought in order that he be deemed thereafter free from the laches which bars those who sleep on their rights. Cox v. Stokes, 156 N. Y. 491, 511, 51 N. E. 316. Nor does failure, long continued, to discover the appropriate remedy, though well known, establish laches where there has been due diligence, and, as the lower courts have here found, the defendant was not prejudiced by the delay." In this case, strongly relied upon by plaintiffs, great persistency was shown from the beginning by the minority stockholders; they did not sit idly for years, with their eyes open without diligent investigation and the persistent pursuit of those they believed to have committed a wrong against them. It will be noted that the learned justice makes a very clear distinction between the facts underlying the Southern Pacific Case and the facts found in the instant case. There was no lack of diligence in seeking a remedy in that case, whatever the lapse of time may have been.

Counsel for plaintiffs assert in their brief on page 4 that: "The complaint alleges and the fact is that there was no authority under the laws of Washington for the incorporation of a stock savings bank, or authority to amend the articles of incorporation of the Security Trust Company so as to authorize it to do such a banking business." Such change had the approval of the supervisor of banking of the state of Washington, and the proceedings to dissolve the society and transfer its property to the bank were also held valid by the superior and Supreme Courts of Washington, but for all of that, in view of the information possessed by plaintiffs as disclosed by the bill and arguments of counsel, there was nothing to prevent the commencement of this suit three years ago, if upon investigation they believed then as they apparently do now. They might have had a redetermination of the issues heretofore decided by other tribunals, and before new conditions had arisen further to complicate the situation. Although the court is impressed by arguments of counsel for plaintiffs and the statutes and authorities cited, the facts disclosed by the bill do not seem to justify their application as authority for a denial of the motion.

In the circumstances here, so it appears, the court may refuse to decide the case upon motion, and require the defendants to interpose their defenses, but, having been fully advised and being firm in the belief that the case ultimately would have to be dismissed, it would seem to be a useless thing to deny the motion and incur the expense of further proceedings; accordingly, the motion to dismiss the bill will be granted, and it is so ordered.