[No. 27403.  Department Two.  April 10, 1939.]

KATIE HENRIOD, *Appellant,* v. KATHERINE E. HENRIOD, *Individually and as Executrix, Respondent.*[1]

[1] Reported in 90 P. (2d) 222.

*Williams & Redfield,* for appellant.

*Dillard & Powell* and *Harry T. Davenport,* for respondent.

SIMPSON, J.—Plaintiff instituted this action for an accounting and to recover the value of personal property claimed to have been concealed by her husband, now deceased, when they made a property settlement just prior to the time she secured a divorce from him.

In her complaint, plaintiff alleged that she and Henry D. Henriod were married November 1, 1892, and thereafter were wife and husband until May 25, 1926, at which time they were divorced by decree of the Spokane county superior court; that April 19, 1937, Henry D. Henriod died testate and his will was admitted to probate; that the defendant Katherine Henriod was appointed executrix May 12, 1937, and had possession and control of all the property accumulated by the community composed of plaintiff and Henry D. Henriod; that defendant, formerly Katherine E. Shibel, is a niece of plaintiff, and June 11, 1936, was adopted by Mr. Henriod. It was further alleged that, during their married life, plaintiff and her husband accumulated property of a value in excess of seventy thousand dollars, but that in the decree of divorce no mention was made of any property settlement.

Plaintiff alleged that, when the property settlement was made, her husband concealed certain properties from her which were of a value in excess of sixty thousand dollars, consisting of moneys in possession, corporate stocks and bonds of various kinds, moneys owing, and real estate or interest in real estate held in the name of others. Plaintiff then alleged her ignorance of business matters and lack of education. Finally, the complaint contained the averment that,

both before and after the divorce, Henry D. Henriod and the defendant conspired to cheat and defraud plaintiff of the community property concealed by her husband at the time of their property settlement; that defendant and Henry D. Henriod represented that Henriod had suffered great financial losses and was in a straitened financial condition; that Mr. Henriod supported the defendant and diverted from the community funds thousands of dollars in the improvement of certain property and in the liquidation of incumbrances thereon acquired by the defendant, all of which was unknown to plaintiff.

In her answer, defendant admitted the allegations concerning the marriage and divorce of plaintiff, the death of Mr. Henriod, and the probate of the estate, denied that any property remained undivided at the time of the divorce, and denied all of the other allegations.

Four affirmative defenses were interposed. First, that, on or about the 28th day of August, 1925, plaintiff sued her husband for divorce; that an interlocutory decree was entered November 19, 1925, and the final decree was entered May 25, 1926; and that October 10, 1925, plaintiff and her husband, each being represented by counsel, entered into an agreement wherein plaintiff agreed to convey, sell, and assign to her husband certain real and personal property, and her husband agreed to convey to plaintiff real and personal property in settlement of their respective property rights.

The second defense stated the value of the assets of the community on October 10, 1925, was approximately $46,311.66; that the value of the property and funds transferred to plaintiff pursuant to the agreement was approximately $15,500; and that subsequently, in addition thereto, Mr. Henriod paid to plain-

tiff and transferred property to her by deed and by his will in the aggregate amount or value of $10,933.41. The third affirmative defense alleged that the plaintiff's action had not been commenced within the time limited by law; and the fourth defense was to the effect that plaintiff failed to investigate and prosecute her claim during the lifetime of Henry D. Henriod, and her claims were barred by laches.

Issue was joined by an appropriate reply filed by the plaintiff. The case was tried to the court, who made an oral finding in favor of defendant. After a motion for a new trial had been made and denied, the court made findings of fact, conclusions of law, and entered a judgment dismissing plaintiff's complaint. This appeal followed.

The errors assigned relate to the consideration by the trial court of matters neither involved in the action nor material to a determination of the case, the denial of the motion for a new trial, the failure to award appellant recovery for her interest in the undisclosed property, the dismissal of the complaint and the denial of recovery, the findings made by the court, and the court's failure to make findings proposed by appellant.

The facts disclosed by the record are as follows: Appellant was born in Germany, and came to this country with her parents when she was about seven years of age and settled in Nebraska. She was married in that state to Bert Barton, but shortly thereafter, at the age of twenty-four years, left her husband and came to Walla Walla, to which place her parents had moved. After arriving at Walla Walla, appellant worked as a waitress about ten or fifteen years, and accumulated savings in a considerable amount. She secured a divorce from her first husband, and thereafter married Henry D. Henriod November 1, 1892.

Appellant and her husband lived at Walla Walla

for some time, engaging in business there before moving to Spokane. For many years, her husband was employed by Bissinger & Company, hide and fur dealers, at a monthly salary of $275, and received in addition certain bonuses. The Spokane home, located in a good residential part of the city, was beautifully and completely furnished. Appellant was a patient at two different sanitariums, and for a few months in 1923 was a patient at the Eastern State Hospital at Medical Lake.

For several years prior to 1925, appellant and her husband had marital difficulties. In 1918, she consulted M. E. Mack, a Spokane lawyer, regarding a divorce. At various times between 1920 and 1922, she consulted Robert Danson, of the Spokane bar, concerning the securing of a divorce or a decree of separate maintenance. Mr. Danson negotiated for a property settlement, and prepared a divorce complaint which was not served. In August, 1925, appellant employed John L. Dirks, of Spokane, as her attorney, and instituted the divorce action. Trial was had, the interlocutory order was filed November 19, 1925, and the final decree was entered May 25, 1926. No reference was made to property in the interlocutory order or the final decree.

October 10, 1925, appellant and her husband entered into a written agreement, by the terms of which their property was divided. Appellant secured certain real property in Walla Walla and Spokane, the furniture in the Spokane home, her jewelry, money, and other personal property, together with $1,500. Mr. Henriod paid all of the expenses of the divorce proceedings. For many years after the divorce had been granted, Henriod paid his ex-wife ten dollars per month, a large portion of the expenses incident to a remodeling of the houses in Walla Walla, owned by

524

his wife, and a large part of the taxes, together with her light, water, and telephone bills. He provided in his will that appellant should have certain real estate in Walla Walla and the sum of $35 per month during the remainder of her life, and set aside property in trust to insure that payment.

Mr. Henriod, during 1925 and 1926, received from an insurance company, on account of an accident he had, the sum of $6,383.57. On or about June 24, 1927, he purchase ·a one-story brick building in Spokane, paying therefor the sum of thirty-two thousand dollars, the money being obtained through the sale of bonds owned by him.

Appellant contends that the court, in deciding the case and in the denial of a motion for a new trial, was controlled by matters not in issue, and in support of that contention calls to our attention the following portion of the trial judge's oral decision made at the close of the trial:

"It seems to me from the attitude and the conduct of Mrs. Henriod on this case that she was endeavoring to recover something that she knew she wasn't entitled to. Now, may I call your attention to this fact: on the first day of the trial when she was called to the witness stand, it seemed almost impossible that she could mount that stand. She walked hesitatingly. Mr. Walker assisted her. She couldn't get up on that stand without assistance. He almost lifted her there. It was the next day—possibly it was two days later when Mr. Williams called Mrs. Henriod over to the jury box there to assist him in some matters. She walked spryly as a girl across this court room. She mounted those steps over there alone without any assistance. She did that not only that time but repeatedly since. I didn't like that appearance at all. I didn't like the looks of things. That just throws some light on the case that it seems to me controls the entire testimony. I better not say any more. You may prepare your findings."

The supreme court of Colorado in the case of *Boykin v. People,* 22 Colo. 496, 45 Pac. 419, stated:

"We cannot agree with the argument that the defendant's conduct during the trial of a case and in the presence of the jury is not a proper subject of their observation. Indeed, we know it to be a fact, grounded in human nature, that the conduct of a defendant, or of a party to a suit, during the trial is more or less potential, and has necessarily more or less influence with the court and jury upon the question of his credibility; . . .

"The conduct of the defendant while testifying, and his demeanor during the trial, in the jury's presence, provided he offers himself as a witness, are fit subjects for the jury to consider as affecting the credence to be given to his testimony."

We do not see any reflection of error in the court's statement. Considered as a whole, it only indicates that the court was observant not only of the facts testified to in the court room, but also of the attitude and conduct of the witness during the progress of the trial. To watch the attitude and demeanor of a witness testifying at a trial, is not only the right but also the duty of the trier of facts.

■ Next, it is urged that the court erred in denying the motion for a new trial.

While the reason for the denial of the motion for a new trial is not disclosed by the record, we do not find any abuse of discretion in denying the motion.

In *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993, this court said:

"The trial courts have wide discretion in granting or refusing new trials, and the exercising of this discretion in granting a new trial will not be interfered with except in situations in which purely questions of law are involved."

■ Appellant also contends that the trial court erred in finding that whatever cause of action appel-

lant had, if any, was barred by the statute of limitations, which began to run at a time when appellant had notice that Mr. Henriod had other property not disclosed by the property settlement agreement.

The statute of limitations, Rem. Rev. Stat., § 159 [P. C. § 8166] subd. 4, reads:

"Within three years:   . . .

"4.   An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud;  . . ."

We have consistently held that actions for relief on the ground of fraud premised upon Rem. Rev. Stat., § 159, subd. 4, embrace only

" '. . . suits by parties to contracts who are asking to be relieved from contracts that they were fraudulently induced to make, as where a deed has been fraudulently obtained, and suits of that character where fraud is the substantive cause of the action.' " *Morgan v. Morgan,* 10 Wash. 99, 38 Pac. 1054.

See, also, *Wagner v. Law,* 3 Wash. 500, 28 Pac. 1109, 28 Am. St. 56, 15 L. R. A. 784; *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N. S.) 279; *Thomas v. Richter,* 88 Wash. 451, 153 Pac. 333;   *Golden Eagle Mining Co. v. Imperator-Quilp Co.,* 93 Wash. 692, 161 Pac. 848, L. R. A. 1917C, 113; *Hutchinson Realty Co. v. Hutchinson,* 136 Wash. 184, 239 Pac. 388; *Constable v. Duke,* 144 Wash. 263, 257 Pac. 637; *Gustafson v. Cullen,* 155 Wash. 107, 283 Pac. 1087.

The case at bar is an action on the ground of fraud within Rem. Rev. Stat., § 159, subd. 4, since the alleged fraud attended the execution of the contract and inhered in the contract itself.  *Gustafson v. Cullen,* 155 Wash. 107, 283 Pac. 1087.  In an action for relief on the ground of fraud, it is incumbent upon the aggrieved party to establish his inability to discern the perpe-

tration of the fraud notwithstanding the exercise of reasonable diligence.

In *Noyes v. Parsons,* 104 Wash. 594, 177 Pac. 651, the court said:

"The broad assertion that the statute does not run until the fraud is discovered is not tenable. The statute begins to run when the fraud should have been discovered, and a clue to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to discovery. *Deering v. Holcomb,* [26 Wash. 588, 67 Pac. 240, 561] *supra.* A general allegation of ignorance at one time and knowledge at another is of no effect."

In the case of *Tjosevig v. Butler,* 180 Wash. 151, 38 P. (2d) 1022, this court stated:

"The statute of limitations begins to run, not only upon discovery of fraud, but also from the time when the fraud should have been discovered; and a clue to the facts, which, if diligently pursued, would lead to a discovery, is in law equivalent to discovery itself. Notice sufficient to excite attention and put a person on guard or to call for an inquiry is notice of everything to which such inquiry might have led. *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360; *Hoy v. Burk,* 92 Wash. 536, 159 Pac. 701; *Johnston v. Spokane & Inland Empire R. Co.,* 104 Wash. 562, 177 Pac. 810; *Noyes v. Parsons,* 104 Wash. 594, 177 Pac. 651."

Assuming Mr. Heriod did conceal assets from his wife, it is plain she had, from the contract itself and the information received from others, sufficient information to disclose to her the facts relative to the concealment of assets. It is impossible to arrive at any conclusion other than that appellant knew about the bonds or securities, or at least had sufficient knowledge of their ownership by her husband to put her on notice. The evidence discloses that she knew as much

concerning the bonds, securities, and the insurance payments during the years 1925, 1926, and 1927 as she did at the time of the trial.

Appellant in her testimony, in answer to a question concerning the insurance money her husband received, said:

"I never knew nothing about it from the time I went to Hahn and Hahn says, 'Are you going to get some of this insurance, this two thousand dollars?' I said, 'I don't know nothing about it,' so he told me about how much he got, and so I didn't go .back to Hahn any more and I never heard any more about it. That was the end of it."

She stated that the information relative to the insurance money was obtained from Hahn, an insurance underwriter, a year or two after Mr. Henriod was injured in 1925. Concerning her knowledge of the purchase of the property in 1927, she admitted that Madam Lada Veze and the Bissingers had told her shortly after the divorce that her ex-husband had owned a building for a long time under an assumed name.

The statute of limitations started to run not later than the year 1927, and therefore appellant's right to maintain this action is foreclosed.

Appellant earnestly contends that the gravamen of this action is not fraud, but is for the recovery of property held in common by herself and her husband, and the statute would not commence to run against her assertion of her rights as a tenant in common, and cites in support thereof *Graves v. Graves*, 48 Wash. 664, 94 Pac. 481, and *Hicks v. Hicks*, 69 Wash. 627, 125 Pac. 945. The cases are not in point, for in neither of them do we find any reference to a contract between husband and wife made before obtaining a divorce in which they divided their community property.

Appellant calls our attention to *In re Madden's Estate*, 176 Wash. 51, 28 P. (2d) 280, and contends that the rule announced there was to the effect that fraud is not present in cases where the husband obtains deeds to property from his wife for a consideration grossly inadequate. The facts in the cited case and the one at bar are entirely dissimilar, for here there is no contention with respect to the inadequacy of the consideration, but a charge in the complaint that:

"Henry D. Henriod and defendant conspired and colluded together to cheat and defraud this plaintiff and to appropriate to themselves plaintiff's property rights as a member of said marital community and to divert portions of such community property to the said defendant, and said conspiracy continued thereafter at all times until the death of said Henry D. Henriod."

Counsel for appellant urge that appellant was not of the mental capacity which would enable her to appreciate the information she received concerning the deception and the facts contained in the agreement. However, the reading of her evidence indicates a strong and definite knowledge so far as money saving and property rights are concerned. It is quite evident appellant would have consulted counsel at the time she was advised that her former husband had owned property under an assumed name or had received a payment of money from the insurance company if she felt she had been misled or misinformed concerning the amount of community property. It is equally apparent that appellant secured the property she desired in the settlement, and knew that she could not recover other property during the lifetime of Mr. Henriod.

The trial court heard and observed the appellant during the progress of the trial, and did not detect any mental weakness which would justify holding that she

530

was incapable of understanding her position or protecting her financial affairs.

Finding no reversible error, we affirm the judgment.

BLAKE, C. J., BEALS, GERAGHTY, and MILLARD, JJ., concur.