Hemphill, Cii. J.
I do not propose to examine in detail the various errors which have been assigned. The investigation will be restricted tot lie main question in the cause, and that is, whether the suit is barred by the statute of limitations. There is no doubt, that the statute commenced running against the plaintiff on the death of the husband Johnson, and did not cease, to run on her second marriage. It is an invariable rule of construction that when the statute has once "commenced to run no subsequent disability will impede it unless specially provided for by statute. (Angelí on Limitations, p. 200.)
By the act of limitations it. is declared that all actions for detaining' the. personal property and for converting such property to one’s own use, all actions for taking away the goods and chattels of another, shall be commenced and sued within two years next after the. cause of such action and not after. Johnson, the husband'of the plaintiff, having departed this life in December, 181Í, the bar of the statute was complete in two years afterwards, viz, in December, 184G. But it was charged by the court that although the operation of llm statute would not be impeded by the second marriage, yet, that if the defendant and those under whom he claimed had by fraudulent devices secreted the negro, the plaintiff had two years after the discovery of his whereabouts to bring’her suit.
How, whether this bo law or not, it is not material in this case to inquire. The plaintiff did not plead in her original petition, nor has she by way of amendment or in any form, that the defendant and those under whom she claimed had fraudulently concealed the property or employed any artilices or tricks for that purpose; and all the evidence introduced to prove such fraudulent concealment was irrelevant and inadmissible.
The demurrer to the petition was perhaps properly overruled, for such is the ambiguity and vagueness of the allegations that the time of the accrual of the cause of action cannot be ascertained. But the defendant pleaded in the usual form the statute of limitations, (3 Chitty, 1030,) and the plaintiff should then by amendment have specially pleaded this exception, which she contends must bring her within the saving of the statute, or rather carry her by its intrinsic force beyond the pale of the operation of the act. This she has not done. Site has not charged in her pleadings that the defendant had fraudulently concealed the property to prevent the bringing of suit; she alleges, indeed, that the pretended title under which the defendant holds is wholly fraudulent and void, but this relates only to the inception and character of the title, and cannot he so extended as to cover fraudulent devices to secrete the property to prevent suit from being brought.
The court was requested to charge that if the exception of fraudulent concealment of property to prevent the bringing of suit be allowed by statute, yet. the plaintiff could not rely upon it, as it was not set forth in her pleadings. This was refused, and the court charged that there was sufficient fraud charged in the petition. The averments of the petition in this particular have just been considered, and it is manifest that the charge of the court is wholly erroneous. The averments of the petition refer, as has been already said, to the character *184 of ttie defendant’s title and not to devices for the concealment of the property; and the proof of such misconduct should have been excluded.
But if the fact, of fraud or fraudulent concealment to prevent suit were allowable as an exception to the statute on any recognized principles of law, and if allowed, were it applicable indiscriminately to all actions, whether of common law or equitable cognizance, had those jurisdictions continued separate, and had tlie exception been distinctly pleaded in this case and a foundation given for the. evidence which was introduced to prove the facts involved in the exception, or, in other words, if all the evidence improperly introduced had been legally admissible, yet the charge of fraudulent devices or concealment on the part of the defendant appears to have been almost wholly nnsustained by proof, especially when it is considered that this concealment must he of a character which would prevent the plaintiff, in tlie exercise of a reasonable diligence, from discovering- the place where the slave was stationed or detained. ‘ What are the prominent, facts connected with this charge of fraudulent concealment? The plaintiff'appears to have resided, at the time tin; boy left her possession, in San Augustine county. Amos Clark, according- to the testimony of Thompson, obtained the negro from her, and the boy was subsequently placed in the hands of Elisha Roberts, a resident of the same county, and remained there until the deatli of Roberts, in 3845, when, on division of liis estate, he was taken by the defendant (according to tlie testimony of Thompson) to liis plantation on the Trinity. The witness Thompson bad reserved to himself a guardianship over tiie property, with power to resume possession at pleasure, and to keep or dispose of it for the benefit of tlie plaintiff'. He seems to have had pretty accurate knowledge of the movements in relation to tlie slave, and evinces in liis testimony a strong regard for (lie, interests of the plaintiff'. It appears also that the defendant is a son-in-law of Roberts. The witness Lewis testifies that lie was the agent of his sister; that from rumor it. was known that the negro was down on tins Trinity. The witness Likens proves that he became tlie agent (>f 1 lie plaintiff' some short time before this suit was commenced; that he went down to see about (.lie hoy to McDonald's, at Huntsville; that he there found the negro had been moved to Roberts’ plantation, in Houston county, on the east hank of tile Trinity; that the plantation and tlie negro had been,"since tlie death of Roberts, given in as tlie property of Mrs. McDonald.
Is there any concealment in these facts in reference to this boy? Would a different course be pursued in reference to any slave employed in the operations of a plantation, and who, upon the death of his owner, had been assigned to one of the heirs as a portion of a distributive share? The negro remained notoriously in the possession of Roberts until his death. On division of liis estate lie went, into possession of liis son-in-law, and was afterwards given in a-, the property of liis wife, and was found on liis plantation, the place where it might reasonably have been supposed lie would be located. It cannot be required of all the planters and farmers in the county, whose farms may possibly be somewhat remote from villages, towns, or dense settlements, that they must proclaim by descriptive and public notices that sucli negroes or other property are to be found on their plantations, under penalty! on failure, of deprivaiion of the guarantee and security of title thrown around property generally by the operation of tlie statute"of limitations. This would be aii extremely unjust and odious discrimination. There must, in almost all cases where suit is brought for personal property, be some difficulty in identifying tlie property or proving that tlie article sued for is the same that is then in posses-ion of the defendant.. But it lias never been supposed that difficulties of this character could impede the operation of tlie statute, yet they are as fully euliiled lo consideration as tlie pretext set up ill this case. The witness Liken:-, as soon as liis agency commenced, had no difficulty in discovering where the negro was, and lie found the negro on the, defendant’s plantation, \\ here l.e should have been expected to be found. He did not make inquiries in Ban Augustine, one hundred and thirty-five or forty miles distant *185 from tlie residence and plantation of defendant, who was known to have taken the boy into possession, but proceeded to tlie locality where his inquiries wore likely to be satisfied, and lie at once succeeded.
To permit tlie operation of the statute to be defeated on such evidence would be dangerous. Tlie rights of parties could receive but very little protection from the statute if tlie time of the accrual of the cause of action cannot be fixed with a reasonable degree of precision and certainty. For instance, the cause of action accrues on a note at its maturity. The point for the commencement of tlie statute, being thus fixed, tlie time at which the bar will be complete cannot be mistaken by the humblest capacity. Tlie point for tlie commencement of the statute in this case is the death of Johnson, tlie husband of the plaintiff; and if the, statute, were permitted its full force and effect, the bar, as must be known to all who have any knowledge of the terms of tlie law, would be complete within two .years. But if the times for the commencement of limitation can be changed or fixed arbitrarily by judicial discretion, or be made to depend upon the caprice, ignorance, or laches of the party to be benefited by the delay, or bv ol her considerations extraneous to the statute, then all the guards raised by the statute for tlie protection of the rights of parties are in danger of being demolished. Time, without any respect to human statutes or the defences under thorn or beyond them rushes on, and in a short space removes the witnesses who were tlie depositories of the truth in relation to any particular transaction, and obliterates all evidences by which it could have been explained. . If suits can bo delayed on such flimsy grounds as are set up in this case, they may be indefinitely postponed ; they'níay be brought immediately, when they could be met and perhaps successfully repelled, or they may hang for years over a party, menacing and annoying, and may at last be discharged upon him when time has swept oil' his defenses and the evidences of his right, and he is forced to surrender liimsclf a powerless victim into the hands of his adversary.
But the law is not thus neglectful of the security of the citizen or tlie repose of his rights. Among' all civilized nations there exist laws of prescription, and our own statute imposes rules for the limitation of actions. They are designed to shorten the period within which rights may be litigated and to give certainty to titles in property. And if we are authorized to make any exception not expressly provided for by the statute, the general policy and spirit of the statute must still be regarded, and the exception must bo in strong cases, and such as would be fully warranted by ailj udications in other States and nations where the, subject, on statutes containing similar provisions, lias been well considered. If fraud be set up and such plea be allowed, the party must prove that due diligence was exercised to detect the fraud; and if the fraudulent transaction or management be such as could be detected with ordinary care and attention, it shall be proved to have been thus detected. (Angelí on Limitations, p. Tlie plaintiff*, in most of such eases, must have greatly the advantage over the defendant.. It would be very difficult, generally, for tlie latter to prove at what time tlie discovery of tlie supposed fraud was made by the plaintiff. In many eases this would lie in tlie bosom of the plaintiff alone. In none would lie produce witnesses who could testify to his knowledge of tlie fraud at a period so remote as to show that the bar of the action was complete before tlie commencement of suit. Tims one of tlie great objects of tlie, law would lie defeated. This, to shorten litigation and give certainty to title, requires the statute to run from the accrual of tlie eaitsc of action, and that is, generally, whenever suit can by law be instituted, unless there be some special exemption or disnbdify. But here the plaintiff might for a long period have live power of fixing himself when the cause, of action shall accrue; that is, lie can prove that liis discovery of the fraud was at such time as will best suit himself. And this lie can do very often with impunity, as it would be impossible. frequently for tlie other party to prove at wliat time his knowledge really commenced. As a safeguard, then, to the defendant, if the exception *186 oí fraudulent concealment be allowed at all, it should be strictly and clearly proven, and also the time at which the fraud was, or, by reasonable diligence, might have been discovered.
Note 74. — Smith r. Talbot, 18 T-, 774; Smith v. Fly, 24 T., 315. The fraudulent concealment of the plaintiff's cause of action by the defendant will take the ease out of the bar of the statute. (¡Munson v. llallowoll, 2G T.,475; Ripley v. Withoe, 27 T., 14.)
Note 75. — Huntsman v. Jarvis, 17 T., 181.
The verdict is not sustained by the proof, even if that were admissible. In one of the charges the court says, that if the jury believed there was fraud o.t' t he part of l lie defendant and those under whom he held, as he set up no claim but naked possession and the statute of limitations, the statute was no bar. if this refers to 1 lie origin of the title the error is manifest-. In the case of Thomas v. Greer, which was a suit for a slave, it was said that “the statute makes no exception as t.o the circumstances under which the possession was acquired. The only essential ingredient is that it is adverse to the title sued on ; and if it is adverse, it would be defeating- the intent of the statute to permit, an inquiry into the legalit jr of its origin. If that possession has been adverse for lii'u years preceding the commencement of suit, it is a bar.” Decided at Tyler, 1851. (6 Tex. R.)
I have refrained from the expression of any opinion as to whether and under what circumstances fraud or fraudulent concealment of a cause of action mi the part of a defendant, until discovery, could be set up to defeat the miming of (lie statute. It does not arise oil the pleadings and is not necessary to the disposition of the cause, and the circumstances under which this opinion is prepared do not permit that full discussion which is demanded by the subject before decision. We are not to he understood as intimating- that mulct- no eircumstatices could fraud or fraudulent concealment he set tip to prevent the miming- of the statute until discovery be made, hut we intend simply to say that, in this case, it is not necessary to give any opinion, and we give none upon the subject. As to the effect of the death of the negro pending- suit upon the rights of the parties, reference may be made to the case of Porter and Wife v. Miller, decided in Galveston, 1852, (7 Tex. R.,) where the subject is fully discussed.
It is ordered, adjudged, and decreed that the judgment be reversed and the cause be dismissed.
Reversed and dismissed.