CRISSMAN *v.* CARL LEE.

Opinion delivered January 14, 1918.

1. ATTORNEY AND CLIENT—COLLECTION BY ATTORNEY—LIMITATIONS—KNOWLEDGE OF CLIENT.—Where an attorney has collected money for his client, and has failed to pay over the same, limitations do not begin to run against the client unless the client has notice by some means of the collection, or unless the attorney can show that the client could by ordinary diligence have had knowledge of the collection.

2. ATTORNEY AND CLIENT—COLLECTION—LIMITATIONS.—A client may sue his attorney for a sum collected by the latter for him, provided the client sues within three years after he receives notice of the collection.

Appeal from Woodruff Circuit Court, Northern District; *J. M. Jackson,* Judge; reversed.

*J. C. Brookfield,* for appellant.

1. It was error to dismiss as to the bank. The error is apparent from the record. 56 Ark. Law Rep. 219.

2. The suit was not barred. It was brought within three years after plaintiff had notice of the collection, and demand and refusal to pay. 7 Ark. 449; 24 *Id.* 385; 25 *Id.* 462; 25 Cyc. 1086; 8 Ark. 429; 29 *Id.* 99, 108; 64 *Id.* 165; 10 *Id.* 228; 32 *Id.* 131.

### STATEMENT OF FACTS.

The appellant instituted this suit against the appellees. He alleged in his complaint that Carl Lee was an attorney; that the Woodruff County Bank was doing a regular banking business in the town of Augusta; that appellant owned a mill which was destroyed by fire; that the railroad company acknowledged its liability for the loss and issued its check in payment of the same in the sum of $500, the check being made payable to J. B. Crissman and H. F. Hinkle; that Carl Lee, without authority or knowledge on the part of the plaintiff, cashed the check at the bank wrongfully and fraudulently; that the bank, having knowledge that Carl Lee was without authority to represent plaintiff, cashed the check; that the plaintiff had no knowledge of these transactions at the time same took place; that he demanded payment of Carl Lee and the bank of the money due him, which they refused to pay.

A demurrer was interposed by the bank, which was sustained, and to which ruling of the court plaintiff excepted, but he did not make this ruling of the court one of the grounds of his motion for a new trial.

On motion of Carl Lee, Hinkle was made a party defendant.

Carl Lee answered, denying the allegations of the complaint, and set up that the check was cashed more than four years before suit was brought, and that the amount collected by him on the check was paid to Hinkle; that the plaintiff, by reasonable inquiry, could have ascertained that fact and he therefore pleaded the statute of limitations.

Hinkle answered, denying the allegations of the complaint, and denied that he had any knowledge that the check was made payable to him, and denied that he had any knowledge of the endorsement on the check. Alleged that after he learned that the check was paid to his attorney he demanded settlement and was paid the sum of $450.

The appellant adduced evidence tending to prove that he was the owner of the mill; that the check, which was exhibited with his complaint, was given to pay for the loss of this mill; that Carl Lee was not his attorney; that he did not know that Carl Lee represented him in collecting the check. He never endorsed the check and never saw any of the money. He never authorized anybody to collect the money for him. The check was dated September 7, 1911, and the endorsement on same showed that it was paid September 23, 1911. It was in the year 1916 when he first learned that the check was paid. He had not been on speaking terms with Hinkle for years and did not go to him or to Carl Lee and did not know that they had collected the money. He knew that his brother-in-law, Hinkle, had put in a claim for the loss of the mill. He took steps in September, 1911, to prevent the railroad company from settling with Hinkle. When he understood the claim had been allowed by the railroad company he protested against it being paid to Hinkle and did not know that it was paid to him; did not know that Carl Lee had it. He did not know the check had

been sent to Carl Lee until just before the bringing of this suit.

The claim agent of the railroad company testified, identifying the check as one having been executed by the railroad company in 1911. He stated that the names of H. F. Hinkle, J. B. Crissman and E. M. Carl Lee were endorsed on the check, and that all were in the same handwriting.

At this juncture the court interposed and stated, ''There is no use to consume further time of the court with this case. The evidence on the part of the plaintiff shows that this draft was issued on September 7, 1911, and that it was paid to one of the parties at that time, and that has been something like five years ago, and this is an action for money had and received and is barred by the statute of limitations.'' The court then instructed the jury to return a verdict for the defendants, to which ruling appellant excepted. Judgment was entered dismissing appellant's cause of action and in favor of the appellees for costs. The appellant has duly prosecuted this appeal.

WOOD, J., (after stating the facts). The appellant testified that he never authorized anyone to collect the money on his claim for the loss of his mill, and that it was in the year 1916 when he first learned that some one had done so. He did not go to Hinkle and Carl Lee and did not know that they had collected the money. He had not been on speaking terms with Hinkle for years and had not been associated with him. He further testified that he did not know that the check had been sent to Carl Lee until just before the bringing of the suit. He did not sign his name on the back of the check. The check itself shows on its face that appellant was one of the payees, and appellant alleges in his complaint that he never endorsed the check, and that he did not employ Carl Lee to represent him in the matter, and did not know that he had endorsed his name on the check. Carl Lee, in his answer, makes a general denial of the allega-

tion of fraud, but he does not specifically deny that he endorsed the name of Crissman on the check, nor does he deny that he in this way collected the money.

We must assume, therefore, that Carl Lee endorsed the name of the appellant on the check in order to collect the same, and that in so doing he undertook to act as the agent or attorney for the appellant.

Since the pleadings and the evidence tended to prove that appellee Carl Lee, in collecting the money, assumed to act as the agent of Crissman, the latter would not be barred from suing his agent or attorney for the amount so collected, provided he brought the suit within three years after he received notice of such collection. *Leigh* v. *Williams,* 64 Ark. 165.

The testimony of the appellant tends to show that he had no notice that appellee Carl Lee had collected any money for him. "It is the duty of an attorney or agent who has collected money as such to give notice of the fact to his client or principal within a reasonable time. The statute will not commence to run unless the client has notice by some means, unless the attorney can show that the client, could, by ordinary diligence, have known of the collection." And the burden of showing this is on the attorney or agent. *Jett* v. *Hempstead,* 25 Ark. 462; See, also, *Whitehead* v. *Wells,* 29 Ark. 99.

It was at least a question for the jury to say whether or not, under the evidence, the appellant, by the exercise of ordinary diligence, could have known of the collection made by Carl Lee for him, and whether or not reasonable time had elapsed for the appellant to make demand upon Carl Lee for the money.

The court therefore erred in instructing the jury as a matter of law that the appellant was barred by the statute of limitations from maintaining this suit. For this error the judgment is reversed and the cause remanded for a new trial.