[No. 22969.   Department One.   September 2, 1931.]

MAMIE W. REEVES, *as Executrix, et al., Respondents,* v. JOHN DAVIS & COMPANY *et al., Appellants.*[1]

*Carkeek, McDonald & Harris* and *McMicken, Ramsey, Rupp & Schweppe,* for appellant John Davis & Co.

*Green & Burnett,* for appellants C. P. Burnett and Mark Holmboe.

*Rummens & Griffin,* for respondents.

'Reported in 2 P. (2d) 732.

Main, J.—This action was brought to recover damages for fraud, which the plaintiffs claim was practiced upon them in a real estate transaction. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiffs in the sum of $25,714. Motion for judgment notwithstanding the verdict, and in the alternative for a new trial, being interposed by the defendants and overruled, judgment was entered upon the verdict, from which they appeal.

The facts essential to present the controlling question may be summarized as follows: John Davis & Co., a corporation, was engaged in the city of Seattle in the real estate, rental and insurance business. C. P. Burnett, Mark Holmboe, and Will T. Elwell were connected with the real estate department; Burnett as manager, and Holmboe and Elwell as employees or agents. S. M. Reeves and Mamie W. Reeves, his wife, from time to time made investments in real estate. In 1918, they bought, through John Davis & Co., what is referred to as Seattle tidelands, on First avenue south, in which transaction the company was the agent of the seller. Thereafter, John Davis & Co. negotiated a lease of this property and charged a commission of $250 therefor, and, after the lease was made, collected the rent and looked after the property. In May, 1919, Mr. and Mrs. Reeves purchased, through John Davis & Co., what is referred to as the Lake Union lots, at the price of $8,000. November 15, 1919, they purchased, through the same company, property at Ninth and Olive street, in the same city, for the price of $60,000. The Lake Union lots were turned in as a part of this purchase price at $10,000, the details as to the balance of the purchase price being here immaterial. At the time Mr. and Mrs. Reeves purchased this property, it was represented to them that it was owned by

Annette C. Plough, and that the price which she was getting was $60,000. At this time, Holmboe had an option from Miss Plough, and, after the transaction was closed, she received for the property $44,112.50. John Davis & Co. received no commission upon this or either one of the other sales.

The present action was begun July 29, 1926. If there were fraud, it occurred more than six years prior to that date. In the complaint, it is alleged that Mr. and Mrs. Reeves did not discover the fraud until the month of November, 1925. In the answer, the defendants affirmatively pleaded the statute of limitations. Mr. Reeves died January 2, 1929, and thereafter his widow, as administratrix of his estate, was substituted as a party to the action. The cause came on for trial April 17, 1930, with the result above stated.

Upon the trial, it was admitted that Mrs. Reeves did not discover the claimed fraud until the year 1925, which was less than three years prior to the bringing of the action. There is no evidence that Mr. Reeves had not discovered the alleged fraud prior to that time.

Without so deciding, it will be assumed that John Davis & Co. was the general agent of Mr. and Mrs. Reeves, and that, therefore, a fiduciary relation existed. Giving effect to this assumption, the controlling question is whether the burden was upon the appellants to establish that Mr. Reeves had discovered the fraud more than three years prior to the beginning of the action, or upon the respondents to prove that he had not discovered the fraud until less than three years prior to the time the action was instituted.

Section 155, Rem. Comp. Stat., provides that actions can only be commenced within the periods

". . . herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute."

Section 156 specifies the actions that must be brought within ten years; section 157, within six years; section 158, within five years; section 159 provides:

"Within three years . . .

"(4) An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud; . . ."

It has been held that the legislature in the passage of this act attempted to provide a limitation for every kind of action "that could be brought in the courts." *Citizens National Bank v. Lucas,* 26 Wash. 417, 67 Pac. 252, 56 L. R. A. 812, 90 Am. St. 748; *Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928; *Robinson v. Lewis County,* 141 Wash. 642, 252 Pac. 143, 256 Pac. 503.

The provision in the statute that, in the case of fraud, the action shall not be deemed to have accrued until the discovery of the fraud, is an exception carved out of the general provisions of the act, and, as such, it is necessary, when more than three years have elapsed between the transaction and the bringing of the action, that it be pleaded that the fraud was not discovered by the party bringing the action until less than three years before the action was instituted. Fraud is the substantive cause of action, and upon its commission the right of action arises, but the policy of the law is that, in actions of this character, the cause of action will not be deemed to have accrued until "the discovery by the aggrieved party of the facts constituting the fraud," and it is incumbent upon the one bringing the action to allege and prove when the fraud was discovered. In *Sublette v. Tinney,* 9 Cal. 424, it is said:

"The cause of action cannot be deemed to accrue upon the discovery of the fraud, in any other sense

than that the statute will not be deemed to commence running until such period. Fraud is the substantive cause of action; upon its commission the right of action arises, not upon its discovery. The policy of the law is, that actions on this ground should be commenced within three years; but, that innocent parties may not suffer whilst in ignorance of their rights, the statute excepts them from the limitation until a discovery of the fraud. The latter clause of the section must, therefore, be construed as an exception merely to the general provision, and be pleaded as such. In the present case, then, the cause of action accrued upon the execution of the contract. As this was more than three years previous to the commencement of the suit, the cause of action was barred, and the objection being apparent upon the face of the complaint, could be taken advantage of by demurrer. If the plaintiff was within the exception of the statute, it was incumbent upon him to state it in his complaint. (Citing authorities.)''

The cases of *Freeman v. Hopkins,* 32 Fed. (2nd) 756; *Osmont v. All Persons,* 165 Cal. 587, 133 Pac. 480; *Young v. Whittenhall,* 15 Kan. 579; and *Mason v. Henry,* 46 N. E. (N. Y. App.) 837, are to the same effect.

In *Conaway v. Cooperative Homebuilders,* 65 Wash. 39, 117 Pac. 716, it was held that, in an action for relief on the ground of fraud, it was incumbent upon the plaintiff to show that the fraud was not discovered within three years next prior to the commencement of the action.

It is argued, however, that, if that be the general rule, it is not applicable where there is a fiduciary relation existing between the parties, and that, in such a case, the burden is upon the defendant to show that the plaintiff had discovered the fraud more than three years prior to the time the action was instituted. In *Gray v. Yarbrough,* 61 Cal. App. 724, 215 Pac. 914, which was a case between principal and agent, and

where there was a fiduciary relation, it was held that a complaint, in order to state a cause of action, must show that the fraud was discovered within the three year period. It was there said:

"This action was commenced September 1, 1921, more than three years after the transaction induced by the fraud. The burden was on plaintiff to show that he first discovered the fraud within three years prior to the commencement of the action. (*Prewett v. Dyer,* 107 Cal. 154, [40 Pac. 105].) This he has failed to do. The complaint was defective."

This court, in *Stearns v. Hochbrunn,* 24 Wash. 206, 64 Pac. 165, announced substantially the same rule. In that case, the action was against a real estate broker to recover the difference between the price for which he sold his principal's property and the amount for which he accounted. It was there held that it was incumbent upon the plaintiff to allege in his complaint the time of the discovery of the fraud. The court said:

"It would seem from this that the statute intended that a complaint should be deemed sufficient when it contained a direct and positive statement of the time of the discovery of the fraud, without further negativing the idea that the fraud might have been discovered sooner; leaving it rather a rule of evidence than a rule of pleading, if it still be the rule that means of discovery is equivalent to actual discovery."

If it is necessary in the complaint, in order to state a cause of action, that the time of the discovery of the fraud be alleged, then it necessarily follows that it is incumbent upon the plaintiff to prove that allegation in order to make out a case.

The reason for the rule that it is for the plaintiff to prove the time of discovery, rather than the defendant, is because the time when the plaintiff made the discovery is a matter peculiarly within his knowledge and, generally, it would be difficult for the de-

fendant to prove at what time the discovery was made by the plaintiff. In *McDonald v. McGuire*, 8 Tex. 361, it was said:

"The plaintiff, in most of such cases, must have greatly the advantage over the defendant. It would be very difficult, generally, for the latter to prove at what time the discovery of the supposed fraud was made by the plaintiff. In many cases this would lie in the bosom of the plaintiff alone. In none would he produce witnesses who could testify to his knowledge of the fraud at a period so remote as to show that the bar of the action was complete before the commencement of suit. Thus one of the great objects of the law would be defeated. This, to shorten litigation and give certainty to title, requires the statute to run from the accrual of the cause of action, and that is, generally, whenever suit can by law be instituted, unless there be some special exemption or disability. But here the plaintiff might for a long period have the power of fixing himself when the cause of action shall accrue; that is, he can prove that his discovery of the fraud was at such time as will best suit himself. And this he can do very often with impunity, as it would be impossible frequently for the other party to prove at what time his knowledge really commenced."

The same reason exists for placing the burden upon the plaintiff to show the time when he discovered the fraud in a case where a fiduciary relation exists as it does in any other case. The statute expressly provides that the time shall not begin to run until the discovery by the aggrieved party of the facts which constitute fraud. In 37 C. J., page 1246, it is said that a party asserting the existence of a confidential relationship to excuse his failure to discover a fraud has the burden of affirmatively showing such relationship,

"But when such relationship is shown or admitted, the adverse party has the burden of proving that the injured party had actual knowledge or by ordinary diligence could have acquired it."

In support of this, there are cited the cases of *Day's Committee v. Exchange Bank,* 116 S. W. (Ky.) 259, and *Crissman v. Carl Lee,* 132 Ark. 32, 200 S. W. 133, but, as we read those cases, neither of them supports the broad doctrine stated by the text writer. In the *Day's Committee* case, there was no fiduciary relationship, no authorities were cited, and it was simply stated that,

"Under the issue as made, the burden was upon the bank to show actual knowledge on the part of Day of the failing condition of the bank more than five years before the institution of the suit."

In the *Crissman* case, the action was by a client against an attorney to recover money which the latter had collected, and it was there held that the statute of limitations would not begin to run until the client had received notice of the collection, and that the burden was upon the attorney to show that the client could, by ordinary diligence, have known that the collection was made. That case was decided by the supreme court of the state of Arkansas, and there are three earlier cases decided by the same court holding to the same effect, but the rule of those cases will not support the general doctrine that the burden is upon the defendant to show, when a fiduciary relation is once established, that the plaintiff discovered the fraud more than the statutory period of limitation prior to the beginning of the action. To so hold would be to depart from what appears to us to be the rule generally supported by the authorities, and which this court has in effect adopted.

Cases which hold that, if the fraud itself be secret in its nature, and such that its existence cannot be readily ascertained, or, if there be fiduciary relations between the parties, there need be no evidence of a fraudulent concealment other than that implied from

the transaction itself, are not applicable to the present situation, because in this state, as above pointed out, there is an express statutory provision which provides that in cases of fraud the statute shall not begin to run until the discovery thereof.

Authorities which hold that fraudulent concealment constitutes an implied exception to the statute of limitations have no applicability in this state, not only because of the statutory provision, but also because this court has held that, in the absence of a statute making concealment an exception to the statute of limitations, the court cannot create one. *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N. S.) 279.

There being no evidence that Mr. Reeves did not know of the fraud, if there were fraud, until less than three years prior to the time the action was begun, there was a failure of proof in this regard, which was an essential element for the respondents to allege and prove. The fact that it is admitted that Mrs. Reeves did not know of the fraud until less than three years prior to the beginning of the action does not help the situation, because in this state the husband has the management and control of both community personal and community real property, and it would necessarily follow that it was incumbent upon the respondents to allege and prove that Mr. Reeves did not discover the fraud until less than three years prior to the institution of the action.

There being a complete failure of proof of one of the essential elements of the case, the action cannot be sustained. The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

TOLMAN, C. J., MITCHELL, PARKER, and HOLCOMB, JJ., concur.